UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION


CHARLES ROBERT CHAPMAN,

        Petitioner,

vs.                      Case No. 5:09-cv-539-Oc-27TBS

SECRETARY, DOC, et al.,

        Respondents.

_____

**ORDER**

The Petition for Writ of Habeas Corpus (Doc. #1) (Petition)
challenges a 2006 state court (Marion County) conviction for
possession of a firearm by a convicted felon and possession of drug
paraphernalia. Respondents filed a Response to Petition (Doc. #7)[1]
on February 15, 2010, and an Appendix (Doc. #9) on February 22,
2010.[2] Petitioner elected not to file a reply. See Petitioner's
Response to Show Cause Order (Doc. #13); Order (Doc. #6). Eight
grounds for habeas relief are raised, and the Court is mindful of

---

[1] Respondents calculate the Petition is timely, Response at 7-
9, and the Court accepts this calculation. Respondents concede
that the claims have been exhausted in the state court system,
Response at 7, and, upon review, none of Petitioner's claims are
procedurally defaulted.

[2] The Court hereinafter refers to the Exhibits as "Ex." Where
provided, the page numbers referenced in this opinion are the Bates
stamp numbers at the bottom of each page of the Appendix.
Otherwise, the page number on the particular document will be
referenced.

its responsibility to address each ground, <u>Clisby v. Jones</u>, 960
F.2d 925, 936 (11th Cir. 1992); however, no evidentiary proceedings
are required in this Court.[3]

## STANDARD OF REVIEW

The Court will analyze Petitioner's claims under 28 U.S.C. §
2254(d), as amended by the Antiterrorism and Effective Death
Penalty Act (AEDPA). "By its terms [28 U.S.C.] § 2254(d) bars
relitigation of any claim 'adjudicated on the merits' in state
court, subject only to th[re]e exceptions." <u>Harrington v. Richter</u>,
131 S.Ct. 770, 784 (2011). The exceptions are: (1) the state
court's decision was contrary to clearly established federal law;
or (2) there was an unreasonable application of clearly established
federal law; or (3) the decision was based on an unreasonable
determination of the facts. <u>Id</u>. at 785.

There is a presumption of correctness of state courts' factual
findings unless rebutted with clear and convincing evidence. 28
U.S.C. § 2254(e)(1). This presumption applies to the factual
determinations of both trial and appellate courts. <u>See</u> <u>Bui v.
Haley</u>, 321 F.3d 1304, 1312 (11th Cir. 2003).

---

[3] An evidentiary hearing was conducted in the state court on
Petitioner's Motion for Post Conviction Relief, and Petitioner was
appointed counsel to represent him on the post conviction motion.
Ex. H at 214-19, 231-339.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner claims he received the ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution. In order to prevail on this Sixth Amendment claim, he must satisfy the two-pronged test set forth in <u>Strickland v. Washington</u>, 466 U.S. 668, 688 (1984), requiring that he show both deficient performance (counsel's representation fell below an objective standard of reasonableness) and prejudice (there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### Ground One

The first ground of the Petition is: "Petitioner's Fifth, Sixth and Fourteenth Amendments of Constitution were violated. Trial court erred in denying Appellant's claim where counsel was ineffective when he failed to understand the facts and laws in regard to adequate investigation, preperation [sic], and use of evidence at the pre-trial motion to suppress." Petition at 5. In this ground, Petitioner raises a Sixth Amendment claim asserting he received ineffective assistance of trial counsel for failure to investigate and call defense witnesses for the motion to suppress.[4]

---

[4] Although the claim is couched in terms of the Fifth and Fourteenth Amendments, upon review, Petitioner actually raises a Sixth Amendment claim of ineffective assistance of trial counsel in the body of his Petition. Therefore, ground one will be addressed as a Sixth Amendment claim. Any claim under the Fifth and

Upon review of the record, prior to trial, the following transpired. A Motion to Suppress Evidence All Physical Evidence [sic] was filed on October 12, 2006. Ex. A at 138-40. A hearing was conducted on October 19, 2006. Ex. A, Transcript of Motion to Suppress. Petitioner was represented by counsel. Id. The state called Detective Raymond Dwyer, and the defense called William Ballard, an employee of Mark's Pawn Shop, the location of the offense. Id. The court heard argument. Id. Thereafter, an Order Denying Defendant's Motion to Suppress All Physical Evidence was filed on October 24, 2006. Ex. A at 143-46. The trial court made explicit, written findings of fact.[5] Id.

On direct appeal, Petitioner raised a claim that the trial court erred in denying the motion to suppress because the officer did not have a reasonable suspicion of criminal activity sufficient to warrant an investigatory stop. Ex. C at i. The Fifth District

---

Fourteenth Amendments is unsupported and is due to be denied.

[5] In its Order Denying Defendant's Motion for Reconsideration of Order Denying Defendant's Motion to Suppress All Physical Evidence, the trial court corrected the findings of fact contained in the Court's original Order Denying Defendant's Motion to Suppress All Physical Evidence, deleting a portion of the first paragraph of the findings which stated as follows: "that the man seemed jittery, that the man had approached the locked door of the closed pawn shop and tried to get in, and the situation had made the caller nervous. The man had returned to his vehicle which was described as a Red Ford Explorer." Ex. A at 201. Even with this correction, the court found it did not alter the court's analysis or lead to a different conclusion or outcome concerning the motion to suppress. Id. With that, the motion for reconsideration was denied. Id.

Court of Appeal affirmed, per curiam, on August 21, 2007, Ex. F, and the mandate issued on September 7, 2007. Ex. G.

In its Final Order Denying Motion for Postconviction Relief, the trial court denied Petitioner's claim of ineffective assistance of trial counsel, finding it refuted by the record because Officer's Thompson's probable cause affidavit was consistent with his trial testimony, with the trial testimony of Detective Dwyer, and with the suppression hearing testimony of Detective Dwyer.[6] The factual findings of the trial court are supported by the record. Petitioner has not overcome the presumption of correctness by clear and convincing evidence.

The trial court also found the decision of whether or not to call a witness a tactical one, which should not be second-guessed by the trial court. Indeed, within the Strickland analysis, defense counsel is shielded from this type of review, particularly, after counsel has made a thorough investigation of the law and facts, which is exactly what counsel did in this case.

As noted by the trial court, defense counsel, Jerry Burford, attested that he did not call Officer Thompson at the suppression hearing because he considered his testimony cumulative. Counsel explained that the defense theory for suppression was based upon the case of Popple v. State, 626 So.2d 185 (Fla. 1993), and not a

---

[6] The trial court applied the standard for reviewing an ineffective assistance of counsel claim, as set forth in Strickland v. Washington, 466 U.S. 668 (1984). Ex. H at 355-57.

shotgun approach to seeking suppression. He also testified that this approach was discussed with the defendant and the defendant agreed to this strategy. Finally, Mr. Burford said that, although Officer Thompson may have been able to provide additional information, in his professional judgment, it would not have altered the outcome of the proceeding. Instead, Mr. Burford focused his argument on the lack of a legal basis for the officers to confront Petitioner, relying on the Popple case. Petitioner has not rebutted the trial court's factual findings with clear and convincing evidence.

The court credited Mr. Burford's testimony, recognizing that he had been a long-standing member of the Florida Bar, with almost nine years of criminal defense experience, and the remainder in criminal prosecution, with a wealth of experience in prosecuting and defending motions to suppress. In evaluating the performance prong of the Strickland ineffectiveness inquiry, the Court recognizes that there is a strong presumption in favor of competence. The presumption that counsel's performance was reasonable is even stronger when, as in this case, counsel is an experienced criminal defense attorney.[7] The inquiry is "whether,

---

[7] "When courts are examining the performance of an experienced trial counsel, the presumption that his conduct was reasonable is even stronger." Chandler v. United States, 218 F.3d 1305, 1316 (11th Cir. 2000) (en banc), cert. denied, 531 U.S. 1204 (2001); see Williams v. Head, 185 F.3d 1223, 1229 (11th Cir. 1999) (noting that "[i]t matters to our analysis" whether the attorney is an experienced criminal defense attorney), cert. denied, 530 U.S. 1246 (2000). Mr. Burford had been a member of the Florida Bar since

in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." <u>Strickland</u>, 466 U.S. at 690. "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" <u>Rompilla v. Beard</u>, 545 U.S. 374, 381 (2005) (citations omitted).

The trial court concluded that defense counsel was not ineffective for making the tactical decision to not call Officer Thompson. Not only did the court find counsel's performance within the range of reasonably competent counsel, the court also found Petitioner failed to show prejudice because the court found the outcome of the suppression hearing would not have been affected by additional testimony.

In reviewing the testimony elicited at the suppression hearing, it is evident that defense counsel presented sufficient facts supportive of the allegations in the motion to suppress by cross examining Detective Dwyer and by calling William Ballard. Counsel also made strong arguments for suppression based on <u>Popple</u>. Even assuming deficient performance, Petitioner has not shown prejudice, as the trial court was convinced that the outcome of the hearing would have remained the same even with additional

1977. Thus, at the time of the pretrial suppression hearing on October 19, 2006, Mr. Burford had been practicing criminal law for approximately 29 years.

testimony. Thus, Petitioner has not shown that a reasonable probability exists that the outcome of the proceeding would have been different if his lawyer had given the assistance that Petitioner has alleged should have been provided. Accordingly, Petitioner's ineffectiveness claim is without merit since he has neither shown deficient performance nor resulting prejudice.

Petitioner is not entitled to relief on ground one of the Petition, the claim of ineffective assistance of trial counsel for failure to investigate and call available defense witnesses for a pre-trial motion to suppress. Deference, under AEDPA, should be given to the state court's decision. Petitioner appealed to the Fifth District Court of Appeal, Ex. H at 394, and the appellate court affirmed on August 4, 2009. Ex. K. The mandate issued on August 26, 2009. Ex. L. The state courts' adjudication of this claim is not contrary to or an unreasonable application of Strickland, or based on an unreasonable determination of the facts.

### Ground Two

Ground two of the Petition is: "Petitioner's Fourth Amendments [sic] of Constitution were violated (5th, 6th & 14th Amendments also). The police did not have a well founded and articuable [sic] reasonable suspicion of criminal activity sufficient to warrant an investigatory stop & detention." Petition at 7. In this ground, Petitioner raises a Fourth Amendment claim, asserting the police did not have reasonable suspicion to detain

him and the motion to suppress was incorrectly denied.[8]  Upon review, Petitioner's Fourth Amendment claim is barred from review under Stone v. Powell, 428 U.S. 465 (1976).  A pre-trial motion to suppress was filed, a hearing was conducted on the motion to suppress, and the arresting officer and shop employee testified. The trial court made essential findings of fact, see Tukes v. Dugger, 911 F.2d 508, 513-14 (11th Cir. 1990), cert. denied, 502 U.S. 898 (1991), and the appellate court affirmed the decision.

Ground two of the Petition is not cognizable in a federal habeas corpus proceeding because Petitioner had a full and fair opportunity to litigate the Fourth Amendment issue and took full advantage of that opportunity.  Under the principles of Stone v. Powell, federal habeas review of Petitioner's claim is precluded. Mincey v. Head, 206 F.3d 1106, 1125-26 (11th Cir. 2000), cert. denied, 532 U.S. 926 (2001).  Thus, ground two, asserting a Fourth Amendment violation, is barred and will not be addressed by this Court.[9]

---

[8] Although Petitioner references the Fifth, Sixth, and Fourteenth Amendments in the heading of this claim, in the body of the claim he presents supporting facts and allegations for a Fourth Amendment claim; therefore, the Court will construe this to be a Fourth Amendment claim.  Any claim under the Fifth, Sixth and Fourteenth Amendments is unsupported and is due to be denied.

[9] Assuming this Fourth Amendment claim is not barred, Petitioner, nevertheless, is not entitled to relief on the basis of this claim.  The decision of the Fifth District Court of Appeal affirming the judgment and conviction is entitled to AEDPA deference.  The adjudication of the state appellate court resulted in a decision that involved a reasonable application of clearly established federal law, was not contrary to clearly established federal law, and was not based on an unreasonable determination of

- 9 -

## Ground Three

In the third ground of the Petition, Petitioner claims:  "The trial court erred by allowing evidence of collateral crimes against the Petitioner because it was not inextricably intertwined with the charged offense."  Petition at 8.  The record contains the following.  The state filed a Notice of Intent to Offer Evidence of Other Crimes, Wrongs, or Acts, Ex. A at 135-36, referencing an armed burglary which took place on June 8, 2005.  The defense filed a motion in limine concerning the "alleged firearm" being stolen from a dwelling by Petitioner and/or Jessica Ackerman.  Id. at 150.

These matters were heard on October 31, 2006.  Ex. B at 102-12.  The state argued the facts were inextricably intertwined.  Id. at 105.  The defense argued information concerning the burglary should be kept out, stressing that it was highly prejudicial.  Id. at 108.  In supporting this argument, it was noted that there were two theories by which the state was seeking to introduce the evidence: (1) the Williams[10] Rule (similar fact evidence) or (2) the evidence is factually intertwined and cannot be extricated (a rule of evidence).  Id. at 105-11.  Considering the motion in limine, the court found:

> So as regard to that opinion testimony, again,
> I just want to make it clear that the Motion

---

the facts in light of the evidence presented in the state court proceedings.  See discussion under Ground One.

[10] Williams v. State, 110 So.2d 654 (Fla.), cert. denied, 361 U.S. 847 (1959).

- 10 -

> in Limine is granted on that point and without
> objection. And it is the finding of the Court
> that the facts concerning the burglary and how
> the gun allegedly got into the Defendant's
> hands are inextricably intertwined and so I'm
> going to deny the Motion in Limine on the
> other points and permit the State to go
> forward with that portion of it's [sic]
> evidence.

Id. at 112.

In sum, the trial court found that the burglary and how the gun ended up in Petitioner's hands were facts that were inextricably intertwined. On direct appeal, Petitioner claimed that the trial court erred by allowing evidence of collateral crimes, asserting the crimes were not inextricably intertwined with the charged offense. Ex. C at i. The Fifth District Court of Appeal affirmed the decision of the trial court. Ex. F.

Federal courts possess only limited authority to consider state evidentiary rulings in a habeas corpus proceeding. Relief will be granted based on an evidentiary ruling only if the ruling affects the fundamental fairness of the trial. Mills v. Singletary, 161 F.3d 1273, 1289 (11th Cir. 1998) (per curiam), cert. denied, 528 U.S. 1082 (2000). "Because a federal habeas corpus case is not a vehicle to correct evidentiary rulings, we 'inquire only to determine whether the error was of such magnitude as to deny fundamental fairness to the criminal trial.' Alderman v. Zant, 22 F.3d 1541, 1555 (11th Cir.) (quotation omitted), cert. denied, 513 U.S. 1061, 115 S.Ct. 673, 130 L.Ed.2d 606 (1994)." Baxter v. Thomas, 45 F.3d 1501, 1509 (11th Cir.), cert. denied, 516

U.S. 946 (1995).  Indeed, with respect to an erroneous evidentiary
ruling, relief should be granted by this Court only "if the state
trial error was material as regards a critical, highly significant
factor."  Id.

Upon review, the evidence of the burglary, which took place
the day before the offense at issue, was inextricably intertwined
with the possession of a firearm case.  The theory of the defense
was that Petitioner had no knowledge of the gun being in the
vehicle.  By admitting evidence of the burglary, there was some
explanation as to how Petitioner, Ms. Ackerman, or both came into
possession of the firearm.

The finding of the trial court that the facts concerning the
burglary and how the gun allegedly got into the Petitioner's hands
were inextricably intertwined is supported by the record.
Petitioner and/or Ms. Ackerman obtained the gun from the burglary
which took place the day before the instant offense, and the gun
was found in the car, next to the driver's seat where Petitioner
had been seated.  In the context of this trial, the ruling did not
affect the fundamental fairness of the proceeding.  Ms. Ackerman
attested that she was the one that committed the burglary and
placed the firearm in the car; therefore, the defense offered an
explanation as to how the firearm ended up in the vehicle, next to
Petitioner, without his knowledge.  The trial court's decision to
allow the evidence of the burglary was not contrary to clearly

established federal law, as it did not result in a fundamentally unfair trial. Therefore, ground three does not warrant relief.

## Ground Four

The fourth ground of the Petition is: "(Petitioner's 5th, 6th and 14th Amendments of the U.S. Constitution were violated) Appellate counsel was ineffective for failing to properly raise point[s] that included all the facts and laws governing the issue concerning the state's failure to prove by substantive evidence the corpus delicti of the crime." Petition at 10. Petitioner raises a claim of ineffective assistance of appellate counsel for failure to properly raise an issue concerning the state's failure to prove by substantive evidence the *corpus delicti* of the crime.[11] In establishing a claim of ineffective assistance of appellate counsel, there must be a showing that appellate counsel's performance was so deficient that it fell below an objective standard of reasonableness, but also, there must be a demonstration "that but for the deficient performance, the outcome of the appeal would have been different." Ferrell v. Hall, 640 F.3d 1199, 1236 (11th Cir. 2011) (quoting Black v. United States, 373 F.3d 1140, 1142 (11th Cir. 2004)).

---

[11] Although Petitioner references the Fifth and Fourteenth Amendments, upon review, Petitioner has raised a Sixth Amendment claim of ineffective assistance of appellate counsel. Petitioner has failed to support a claim under either the Fifth or Fourteenth Amendments, and as a result these claims are due to be denied.

This claim of ineffective assistance of appellate counsel was raised in a Petition for Writ of Habeas Corpus filed with the Fifth District Court of Appeal. Ex. M. Petitioner asserted the state failed to prove a prima facie case of guilt before the introduction of Petitioner's alleged statement, and appellate counsel was ineffective for failing to properly raise this point. On October 7, 2009, the state appellate court denied the petition alleging ineffective assistance of appellate counsel. Ex. N.

In <u>Burks v. State</u>, 613 So.2d 441, 443 (Fla. 1993) (per curiam), in discussing the concept of *corpus delicti*,[12] the court recognized that the state has the burden of proving by substantial evidence that a crime was committed. In this case, the *corpus delicti* was established. All of the elements of the crime were proven by direct or circumstantial evidence, independent of Petitioner's statements.[13]

At trial, the state presented the testimony of William Ballard, an employee of the pawnshop, who attested to the

---

[12] The *corpus delicti* of the crime is the body of the crime, which includes the two elements of the act and the criminal agency of the act. <u>Burks v. State</u>, 613 So.2d at 443 n.2 (citing Black's Law Dictionary).

[13] The crime of possession of a firearm by a convicted felon has two elements: the defendant has been convicted of a felony, and after that conviction, he knowingly had a firearm in his possession, care, custody, or control. Ex. B at 289-90. The crime of possession of drug paraphernalia also has two elements: the defendant used or had in possession with intent to use, drug paraphernalia, and the defendant had knowledge of the presence of the drug paraphernalia. <u>Id</u>. at 291.

following.  On the morning of June 9, 2005, he was working at that pawnshop.  Ex. B at 126.  He explained the security concerns in opening the shop, and that the employees follow certain procedures in entering the building, opening the safes, displaying the jewelry, emptying the garbage, and preparing for the day's business.  Id.  He stated he parked in the back of the pawn shop when Petitioner pulled up closer to the building, two parking spots over.  Id. at 127.  Mr. Ballard identified Petitioner as the driver of a red SUV.  Id. at 126-27.  He saw Petitioner "messing with something" in the car.  Id. at 129.  There was a lady passenger in the vehicle.  Id. at 130.

Mr. Ballard proceeded to the front of the shop and entered. Id. at 129.  The next time he noticed Petitioner, Mr. Ballard was preparing to take the garbage out through the back door.  Id. at 130.  At the back door, there is a panoramic viewfinder, providing a panoramic view of 180 degrees to the observer.  Id.  Mr. Ballard heard footsteps, which was extremely unusual because the pawnshop is made of solid concrete walls.  Id.  Mr. Ballard stopped at the door and looked through the viewfinder.  Id.  He saw Petitioner standing in the sidewalk and turning.  Id.  Petitioner turned and looked to the back parking lot.  Id.  At that point, he said "I've got what I need right here (demonstrating) and patted his pocket with his hand."  Id. at 130.  Mr. Ballard observed a bulge in Petitioner's pocket.  Id. at 131.

Mr. Ballard turned around, dropped the garbage, and walked back into the showroom floor and told his co-worker, Marvin, there was a guy outside acting very suspiciously.  Id. at 131.  Marvin told Mr. Ballard to call the police.  Id.  There was a discussion as to whether the police should be called.  Id.  Meanwhile, Petitioner reapproached the front door and tried to open it.  Id. at 132.  Petitioner asked what time the shop opened.  Id.  Mr. Ballard responded 9:00.[14]  Id.  Mr. Ballard watched from the back door to see if Petitioner returned to the back of the building. Id.  Mr. Ballard concluded that Petitioner had to be standing at the corner of the building because he was not visible from the front door either.  Id.  Ultimately, the employees of the pawnshop concluded that they should call the police.  Id. at 131.

Detective Raymond Dwyer attested that he and Officer Thompson were on the way to work when they heard a call on the radio to go to Mark's Pawn.  Id. at 141.  He pulled into the rear of the business, the location of the suspicious vehicle matching the description that was given on the radio.  Id. at 142.  Detective Dwyer parked his vehicle behind the red vehicle.  Id.  He was not in uniform, so he placed a badge on a chain around his neck.  Id. As he approached the vehicle, he saw Petitioner, who appeared to be very agitated, nervous and wired.  Id. at 143.  He also saw Petitioner "placing an item underneath his leg between the seat and

_____

[14] Petitioner approached the front door two more times after this conversation.  Ex. B at 134.

console of the truck." Id. at 144. Detective Dwyer recognized Petitioner, called Petitioner by name, and told him to exit the vehicle. Id. Petitioner "continued to fidget and mess around with something." Id. Detective Dwyer instructed Petitioner to get out of the car. Id. As Petitioner started exiting the vehicle, Detective Dwyer saw a gun, and Dwyer pulled Petitioner out of the car. Id. at 144-45. Detective Dwyer patted Petitioner down, and then passed him along to Officer Thompson. Id. at 145. Detective Dwyer secured the gun. Id. The firearm was located between the driver's seat and the driver's side of the console. Id. at 145-46.

Police officer Larry Thompson testified at trial. He attested that he searched Petitioner and found a crack pipe in the right, front pocket of Petitioner's pants. Id. at 173. Officer Thompson explained that after being placed in a police vehicle, Petitioner made a statement. Id. at 175. Petitioner said it was a good thing that Officer Thompson and Detective Dwyer "got to the pawnshop when we did, something big was going to happen." Id. After arriving at the jail, Petitioner was given his Miranda rights, and he made a statement claiming he stole the gun from a residence, he did have the firearm between his pants (in his stomach area and waistband), and he had a crack problem and needed help for his addiction. Id. at 175-76. He also said he did not wish to hurt any of the officers. Id.

Based on the evidence that was presented at trial, the facts were sufficient to remove any suggestion of Petitioner being

convicted based on a false confession, "derangement, mistake or official fabrication." Burks v. State, 613 So.2d at 443 (citing State v. Allen, 335 So.2d 823, 825 (Fla. 1976)). The state sufficiently proved the *corpus delicti* prior to the admission of Petitioner's statements. Therefore, appellate counsel's performance was not deficient for failing to raise a claim that the state failed to prove by substantive evidence the *corpus delicti* of the crime. Such a claim would have been unsuccessful. Furthermore, Petitioner has not met his burden to show that the outcome of the appeal would have been different if appellate counsel had raised this claim on direct appeal.

The state court's adjudication of this claim was not contrary to or an unreasonable application of clearly established federal law, and was not an unreasonable determination of the facts in light of the evidence. Accordingly, Petitioner is not entitled to relief on the basis of ground four of the Petition.

### Ground Five

The fifth ground of the Petition is: "Appellate Counsel rendered deficient representation violating Petitioner's right to effective assistance of counsel as guaranteed by the 5th, 6th, and 14th, Amendments to the U.S. Constitution." Petition at 22. Petitioner claims his appellate counsel was ineffective for failure to properly raise the claim concerning the illegal police

investigatory stop and detention.[15]  This claim was raised in a
Petition for Writ of Habeas Corpus filed with the Fifth District
Court of Appeal.  Ex. M.  On October 7, 2009, the state appellate
court denied the petition alleging ineffective assistance of
appellate counsel.  Ex. N.

Appellate counsel's performance was not outside the range of
professionally competent assistance.  Upon review of the record,
appellate counsel raised the claim that the trial court erred in
denying the motion to suppress because the officer did not have a
reasonable suspicion of criminal activity sufficient to warrant an
investigatory stop.  Ex. C.  Rather than arguing the placement of
the police officer's vehicle blocking Petitioner's car amounted to
a seizure, appellate counsel asserted that Petitioner should never
have been approached and directed to exit from his vehicle, arguing
there was no reasonable suspicion necessary to commence an
investigatory stop.  This decision did not amount to deficient
performance of appellate counsel.  An explanation follows.

Appellate counsel made the same argument that was preserved by
defense counsel in the pretrial motion to suppress and at trial,
relying on <u>Popple v. State</u>, 626 So.2d 185 (Fla. 1993).  This was a

_____

[15] Petitioner references the Fifth, Sixth, and Fourteenth
Amendments to the United States Constitution; however, upon review,
he has presented a claim of ineffective assistance of appellate
counsel, a Sixth Amendment claim.  The Fifth and Fourteenth
Amendment claims are due to be denied as unsupported in this
ground.  Indeed, Petitioner has failed to meet his burden showing
a violation of constitutional dimension under the Fifth and
Fourteenth Amendments.

case that was considered by the defense to be directly on point, and was also considered by defense counsel to be a theory strong enough that it should stand on its own, unfettered by a shotgun approach. Additionally, no facts were presented at the suppression hearing that Petitioner's vehicle was blocked in by the police officer's vehicle. Ex. A at 1-44. The whole focus of the suppression hearing was based on the seizure as Petitioner was ordered from the car, relying on <u>Popple</u>. Appellate counsel based the argument on what was raised and preserved by trial counsel. A solid foundation was laid for this argument through the motion to suppress, the suppression hearing, and through trial counsel's arguments. Furthermore, there was relevant case law supporting this position. Appellate counsel's performance did not fall below an objective standard of reasonableness based on these circumstances.

The state court's refusal to grant relief on the basis of ineffective assistance of appellate counsel was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Finally, Petitioner has failed to demonstrate that, but for the alleged deficient performance of appellate counsel, the outcome of the appeal would have been different. Therefore, ground five does not warrant relief.

## Ground Six

Ground six of the Petition is: "Trial counsel was ineffective rendering deficient representation when he failed to understand the facts and laws in regard to adequate cross-examinations during trial violating Petitioner[']s 5th, 6th, and 14th Amendments of the U.S. Constitution which guarantee the Petitioner effective representation." Petition at 23. In this ground, Petitioner asserts his counsel was ineffective for failing to conduct an adequate cross examination of Detective Eric Dice.[16] Specifically, Petitioner claimed Detective Dice vouched for the credibility of Ms. Ackerman's statement to him, eviscerating the defense. On cross, Dice admitted that Ms. Ackerman said she had been taking drugs, that he did not choose to ignore that fact, but he believed she spoke the truth when she explained what had occurred. Ex. B at 239.

In its Final Order Denying Motion for Postconviction Relief, the trial court denied this ground. The trial court reviewed the entire context of Dice's testimony, and concluded that defense counsel was actually attempting to discredit Detective Dice by inquiring about Ms. Ackerman being under the influence of drugs

---

[16] Petitioner raises a claim of ineffective assistance of counsel under the Sixth Amendment. Although he also couches this claim in terms of the Fifth and Fourteenth Amendments, he has not supported a claim of constitutional violation under these Amendments. Therefore, any claims under the Fifth and Fourteenth Amendments are due to be denied.

when her statement was made to him.  This conclusion is supported by the record.

Defense counsel first inquired as to whether Detective Dice's opinion was that Ms. Ackerman was not under the influence of drugs when she gave her statement.  Ex. B at 238-39.  Dice responded that he did not know her normal behavior, but Ms. Ackerman's responses were consistent and she appeared to understand the questions.  Id. at 239.  Defense counsel again asked if she said she was on drugs.  Id.  Dice responded in the positive.  Id.  When asked if he ignored her statement that she had been doing drugs, Dice responded in the negative.  Id.  He said he believed her.  Id.  Defense counsel asked if Dice believed her even though she said she was on drugs and he was not familiar with her normal mannerisms.  Id.  In response, Dice said no.  Id.

The trial court concluded that this whole line of questioning was based on a strategy to discredit the testimony of Dice, not an attempt to have Dice vouch for the credibility of Ms. Ackerman. Mr. Burford attested to this strategy  at the evidentiary hearing. The trial court held:  "The decision to question Officer Dice in this fashion is clearly within the boundaries of reasonably competent performance by trial counsel.  *Maxwell, supra*. Accordingly, this claim fails and is hereby DENIED."  Ex. H at 377. This decision was affirmed by the state appellate court.  Ex. K.

The attempt by counsel to discredit the testimony of Detective Dice did not constitute deficient performance by counsel.  Indeed,

this was sound trial strategy.  Harvey v. Warden, Union Corr. Inst., 629 F.3d 1228, 1238 (11th Cir.) (noting the performance inquiry of Strickland usually boils down to whether counsel's actions were the result of deficient performance or sound trial strategy), cert. denied, Harvey v. Reddish, 132 S.Ct. 577 (2011). In light of all the circumstances, defense counsel's performance was not outside the wide range of professional competence. Furthermore, Petitioner has failed to satisfy the prejudice prong of Strickland.  Upon review, there was no unreasonable application of clearly established law in the state court's decision to reject the Strickland ineffectiveness claim.  The decision was not contrary to clearly established federal law and was not based on an unreasonable determination of the facts.

### Ground Seven

The seventh ground of the Petition is:  "Trial counsel was ineffective rendering deficient representation when counsel failed to understand the facts and laws in regard to adequate introduction of contradictory evidence violating Petitioner's 5th, 6th, and 14th, Amendments of the U.S. Constitution which guarantee the Petitioner effective representation." Petition at 25.  Petitioner claims his counsel was ineffective for failure to effectively impeach Detective Dwyer and for failure to adequately cross examine Officer Thompson.[17]  In denying this claim, the trial court found

---

[17] Petitioner, in addition to the Sixth Amendment, references a violation of the Fifth and Fourteenth Amendments.  He complains

that defense counsel adequately investigated and prepared for the pre-trial hearing on the motion to suppress and for the trial. In particular, the trial court found the record showed that defense counsel took the deposition of Jessica Ackerman in preparation of the hearing and in order to be fully informed concerning the facts surrounding the arrest. These findings are supported by the record and Petitioner has not rebutted these findings by clear and convincing evidence.

Defense counsel filed the motion to suppress and called William Ballard to testify at the hearing. At the conclusion of the hearing, defense counsel presented a zealous argument based on the defense's theory for suppression. The trial court denied the motion to suppress, but defense counsel renewed the motion to suppress and urged the trial court to reconsider its ruling. The trial court affirmed its ruling after considering defense counsel's argument. In the motion for new trial, counsel again urged the court to find that it had erred in denying the motion to suppress. A strong argument was made, but the motion was denied.

The trial court also found that defense counsel thoroughly cross examined Detective Dwyer at trial. The record supports this conclusion. Ex. B at 153-65. Petitioner also claims his counsel was ineffective for failing to effectively cross examine Officer

he did not receive effective representation of trial counsel, a Sixth Amendment claim. Any claim under the Fifth and Fourteenth Amendments is wholly unsupported and is due to be denied.

Thompson in order to discredit Detective Dwyer's allegedly false testimony. The record shows that Officer Thompson was effectively cross examined. Id. at 179-91. With respect to counsel's performance with regard to challenging Officer Thompson, the trial court said:

> This claim is also clearly refuted by the record. The probable cause affidavit of Officer Thompson is consistent with his trial testimony, and with the trial testimony of Detective Dwyer, and with the testimony of Detective Dwyer at the hearing on the Motion to Suppress. (See attached probable cause affidavit of Officer Thompson, Trial Transcript, pages 145, 155-163; 172, 181, and Transcript of Hearing on Motion to Suppress, pages 16-18). Officer Larry Thompson did testify at trial and he was thoroughly challenged on cross examination by defense counsel. (Trial Transcript, pages 179-191).

Ex. H at 379-80. Defense counsel extensively challenged these witnesses and was tenacious in arguing his theory supporting the motion to suppress.

In sum, the trial court rejected Petitioner's claim that his counsel was ineffective for failure to effectively impeach Detective Dwyer and for failure to thoroughly cross examine Officer Thompson. Ex. H at 358-61, 377-80. The record supports the trial court's conclusion. This decision was affirmed by the Fifth District Court of Appeal. Ex. K.

Not only was Petitioner represented by experienced and effective defense counsel, his counsel made every effort to ensure that both the trial and appellate courts were provided with the

opportunity to reconsider the merits of the motion to suppress. Additionally, defense counsel conducted thorough and effective cross examination of the state's witnesses. The adjudication of this claim of ineffective assistance of counsel was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Petitioner has not established the first prong of <u>Strickland</u>, that trial counsel's performance was deficient. Nor has he shown prejudice, as required by the second prong of <u>Strickland</u>. Therefore, ground seven does not warrant relief.

### Ground Eight

The eighth ground of the Petition states: "Trial counsel was ineffective rendering deficient representation when he failed to understand the facts and laws in regard to adequate redirect examination of witness violating Petitioner[']s 5th, 6th, and 14th Amendments of the U.S. Constitution which gaurantees [sic] Petitioner effective representation." Petition at 28. In this ground, Petitioner claims his counsel was ineffective for failure to rehabilitate defense trial witness Jessica Ackerman.[18] In its

---

[18] Petitioner raises another claim of ineffective assistance of trial counsel. Although he mentions the Fifth, Sixth, and Fourteenth Amendments, the claim he presents is a Sixth Amendment claim of ineffectiveness of trial counsel. His claim of Fifth Amendment and Fourteen Amendment violations is unsupported and is due to be denied.

Final Order Denying Motion for Post Conviction Relief, the trial court provided some background information for this claim and explained:

> At trial, Jessica Ackerman was called to testify by defense counsel. Her testimony on direct examination was that the defendant was not aware that a firearm was in the vehicle they were occupying. On cross examination Ms. Ackerman testified that she lied to the police when she told them the defendant was involved in the taking of the firearm. (Trial Transcript, pages 222 and 226). Ackerman's trial testimony, and her deposition testimony, was clearly contrary to what she told the police on the day the defendant was arrested.

Ex. H at 359-60.

With respect to defense counsel's performance at trial, the trial court found that defense counsel called Ms. Ackerman at trial to testify that she had lied to the police, attesting that, the day before the instant offense, she burglarized the house and took the firearm, and Petitioner was unaware of the firearm. Of course, this testimony directly contradicted what she had previously told the police (that Petitioner had the gun in his pants when the officers approached the car, and he placed the gun next to the center console before he got out of the vehicle).

The trial court found it was a tactical decision to call Ms. Ackerman, and the decision should not be second-guessed in hindsight. Id. at 359-60. Upon review, it was experienced counsel that made the tactical decision to call Ms. Ackerman, and

also, in this instance, Petitioner was quite insistent that she be called as a witness at trial. Ex. H at 270-71, 317.

Beginning with the strong presumption that counsel's conduct was reasonable, "and that presumption is even stronger when we examine the performance of experienced counsel[,]" Walls v. Buss, 658 F.3d 1274, 1279 (11th Cir. 2011) (per curiam) (citing Chandler v. United States, 218 F.3d 1305, 1316 (11th Cir. 2000) (en banc)), petition for cert. filed, (U.S. Dec. 23, 2011) (No. 11-8965), Petitioner has not shown ineffective assistance of counsel. Although Ms. Ackerman proved to be a less than stellar witness due to her past drug use and poor memory, she was the person at the scene of the offense who could counter the police officer's testimony, although she proved to be inconsistent in her statements and somewhat unreliable. Ex. B at 211-26.

Ms. Ackerman admitted she was using drugs at the time of the offense, and in particular using cocaine every day. Id. at 215-16. Counsel inquired as to whether Ms. Ackerman had a poor memory because she was on drugs, and she responded: "[i]t could be that and it's been a while. I just don't remember certain things, every little thing." Id. at 221. She did firmly state that Petitioner was not aware of the firearm being in the vehicle. Id. at 222. In fact, she said she took the firearms and put them in the vehicle, without Petitioner's knowledge. Id. 225. This certainly supported Petitioner's defense that he was unaware of the firearm that was found next to the driver's seat of the vehicle.

Petitioner also contends his counsel was ineffective for failure to move to suppress the publication of a portion of Ms. Ackerman's DVD statement offered as impeachment evidence and for failure to establish Ms. Ackerman's demeanor when she gave her statement to Detective Dice. The record shows that Detective Dice and Ms. Ackerman both testified at trial concerning the circumstances of Ms. Ackerman's statement. The jury was given the opportunity to assess her credibility and the reliability of the statement.

The trial court found that the portion of the statement used for impeachment purposes was the proper subject of rebuttal testimony and Petitioner failed to establish that a motion to suppress would have had the slightest probability of success under these circumstances. Given that defense counsel conducted a direct examination of Ms. Ackerman, cross examined Officers Dice and Thompson, took pre-trial depositions of the witnesses, and was fully informed of the contents of the statements, the trial court concluded his "direct and cross examination of the witnesses regarding Ackerman's condition and her statements were well within the realm of competency, and it was for the jury to assign whatever weight they deemed appropriate." Ex. H at 382-83.

Petitioner has failed to rebut the state court's factual findings with clear and convincing evidence. Additionally, he has failed to demonstrate both deficient performance and prejudice under these circumstances. As noted by the trial court, counsel is

not ineffective for declining to raise a meritless motion to suppress. Counsel's actions did not constitute ineffective assistance of counsel. Indeed, Petitioner's counsel was well prepared for trial, and his actions reflected that preparation.

The factual findings of the trial court are supported by the record, and Petitioner has not overcome the presumption of correctness of these findings. On August 4, 2009, the Fifth District Court of Appeal per curiam affirmed the decision of the trial court. Ex. K. Petitioner has failed to demonstrate that the state court's denial of this claim was contrary to or an unreasonable application of <u>Stickland</u>, or was based on an unreasonable determination of the facts in light of the evidence presented. Therefore, Petitioner is not entitled to habeas relief on ground eight of the Petition.

## CERTIFICATE OF APPEALABILITY

If Petitioner appeals, the undersigned opines that a certificate of appealability is not warranted. <u>See</u> Rule 11, Rules Governing Section 2254 Cases in the United States District Courts. This Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484

(2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  See Slack, 529 U.S. at 484.  However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  Id. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.    The Petition for Writ of Habeas Corpus (Doc. #1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE.**

2.    The **Clerk of the Court** shall enter judgment accordingly and close this case.

3.    If Petitioner appeals the denial of his Petition, **the Court denies a certificate of appealability**.  Because this Court

has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

       **DONE AND ORDERED** at _Tampa_, Florida, this $30^{\underline{t}}$ day of _April_, 2012.

_____

UNITED STATES DISTRICT JUDGE

sa 4/25
c:
Charles Robert Chapman
Ass't A.G. (Compton)